RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 05a0477p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

AMERICAN CIVIL LIBERTIES UNION OF KENTUCKY;
BART MCQUEARY,

      *Plaintiffs-Appellants,*

        *v.*

MERCER COUNTY, KENTUCKY; CHARLES H.
MCGINNIS, in his official capacity as Mercer County
Judge Executive,

      *Defendants-Appellees.*

No. 03-5142

Appeal from the United States District Court
for the Eastern District of Kentucky at Lexington.
No. 01-00480—Karl S. Forester, District Judge.

Argued: April 27, 2004

Decided and Filed: December 20, 2005

Before: SUHRHEINRICH and BATCHELDER, Circuit Judges; RICE, District Judge.[*]

_____

## COUNSEL

**ARGUED:** David A. Friedman, AMERICAN CIVIL LIBERTIES UNION OF KENTUCKY, Louisville, Kentucky, for Appellants. Francis J. Manion, AMERICAN CENTER FOR LAW AND JUSTICE, New Hope, Kentucky, for Appellees. **ON BRIEF:** David A. Friedman, AMERICAN CIVIL LIBERTIES UNION OF KENTUCKY, Louisville, Kentucky, for Appellants. Francis J. Manion, AMERICAN CENTER FOR LAW AND JUSTICE, New Hope, Kentucky, Mathew D. Staver, Erik W. Stanley, LIBERTY COUNSEL, Longwood, Florida, for Appellees.

      SUHRHEINRICH, J., delivered the opinion of the court, in which BATCHELDER, J., joined. RICE, D. J., concurred in the result only.

---

[*] The Honorable Walter H. Rice, United States District Judge for the Southern District of Ohio, sitting by designation.

---

## OPINION

---

SUHRHEINRICH, Circuit Judge.  Plaintiffs-Appellants American Civil Liberties Union of Kentucky and Bart McQueary (collectively, "the ACLU") appeal from the order of the district court granting Defendants-Appellees Mercer County, Kentucky and Charles H. McGinnis' (collectively, "Mercer County's" or "the County's") motion for summary judgment and dismissing the ACLU's claims.  The ACLU seeks to enjoin the County from displaying an exhibit in its courthouse that includes a copy of the Ten Commandments.  While this appeal was pending, the Supreme Court granted a writ of certiorari in the case of *ACLU v. McCreary County*, 354 F.3d 438 (6th Cir. 2003), *cert. granted*, 125 S. Ct. 310 (U.S. Oct. 12, 2004) (No. 03-1693), *aff'd* 125 S. Ct. 2722 (2005).  Because the challenged display here is identical in all material respects to the third and final display in *McCreary County*, we held this appeal in abeyance pending Supreme Court review.  Unlike *McCreary County*, we conclude that the Mercer County display lacks a religious purpose and further conclude that it does not endorse religion.  Accordingly, we now **AFFIRM**.

### I.

On October 9, 2001, Carroll Rousey, a Mercer County resident, requested permission to hang a display entitled "Foundations of American Law and Government" in the County Courthouse.  The display was to include the Mayflower Compact; the Declaration of Independence; the Ten Commandments[1]; the Magna Carta (in two frames); the Star-Spangled Banner; the National Motto

---

[1] The version at issue reads:

THE TEN COMMANDMENTS

Thou shalt have no other gods before me.

Thou shalt not make unto thee any graven image, or any likeness of any thing that is in heaven above, or that is in the earth beneath, or that is in the water underneath the earth:  Thou shalt not bow down thyself to them, nor serve them:  for I the LORD thy God am a jealous God, visiting the iniquity of the fathers upon the children unto the third and fourth generation of them that hate me.

Thou shalt not take the name of the LORD thy God in vain:  for the LORD will not hold him guiltless that taketh his name in vain.

Remember the sabbath day, to keep it holy.

Honour thy father and thy mother:  that thy days may be long upon the land which the LORD thy God giveth thee.

Thou shalt not kill.

Thou shalt not commit adultery.

Thou shalt not steal.

Thou shalt not bear false witness against thy neighbour.

Thou shalt not covet thy neighbour's house, thou shalt not covet thy neighbor's wife, nor his manservant, nor his maidservant, nor his ox, nor his ass, nor any thing that is thy neighbour's.

Exodus 20:  3 - 17

KING JAMES VERSION

"In God We Trust" and the Preamble to the Kentucky Constitution (one frame); the Bill of Rights; and Lady Justice.

After learning that the Kentucky General Assembly had recently passed a resolution authorizing the inclusion of the Ten Commandments in displays of formative, historical documents on government property, the Mercer County Fiscal Court voted to allow Mr. Rousey to hang the display as described. Mr. Rousey paid for, framed, and hung the display on the courthouse walls himself.

Included in the display is a commentary page that contains an explanation for each of the nine items. The following is the explanation for the Ten Commandments:

> The Ten Commandments have profoundly influenced the formation of Western legal thought and the formation of our country. That influence is clearly seen in the Declaration of Independence, which declared that "We hold these truths to be self-evident, that all men are created equal, that they are endowed by their Creator with certain unalienable Rights, that among these are Life, Liberty, and the pursuit of Happiness." The Ten Commandments provide the moral background of the Declaration of Independence and the foundation of our legal tradition.

As the district court noted, "each frame in the display is the same size and no one item is displayed more prominently than the other." *ACLU v. Mercer County*, 219 F. Supp. 2d 777, 779-80 (E.D. Ky. 2002).

Shortly after Mr. Rousey erected the display, the American Civil Liberties Union of Kentucky, along with Bart McQueary, a member of the organization and a resident of Mercer County, brought suit on November 27, 2001 against Mercer County and Charles H. McGinnis, in his official capacity as Mercer County Judge Executive, seeking injunctive and declaratory relief. In the suit, the ACLU alleged that, because the display included a version of the Ten Commandments, it violated the Establishment Clause of the First Amendment. In support, the ACLU referenced a preliminary injunction issued against several other Kentucky counties for posting an identical display. *See ACLU v. McCreary County*, 145 F. Supp. 2d 845 (E.D. Ky. 2001). In its answer, Mercer County acknowledged its awareness of the injunctions.

Simultaneous with its suit, the ACLU sought preliminary injunction on the basis of the lower court's decision in *McCreary County*. Mercer County defended on the ground that *McCreary County* was distinguishable on the facts. The County also moved for summary judgment, in support of which it filed an affidavit of Judge-Executive McGinnis. In the affidavit, Judge McGinnis explained the County's decision, including Mr. Rousey's involvement and the Mercer County Fiscal Court's awareness of the Kentucky legislature's resolution authorizing such displays. He stated that the purpose for erecting the "Foundations" display was that "all of the documents, including the Ten Commandments, have played a role in the formation of our system of law and government. . . . [The] display is not intended [to], nor does it, endorse or promote religion. It simply acknowledges our history."

After a hearing, the district court denied the ACLU's motion for preliminary injunction, finding the ACLU had not proved a likelihood of success on the merits. *Mercer County*, 219 F. Supp. 2d at 797. The district court applied the familiar three-prong test found in *Lemon v. Kurtzman*, 403 U.S. 602 (1971).[2] *Mercer County*, 219 F. Supp. 2d at 781-82. As to the first prong, the court found Mercer County's stated secular purpose–recognition of the historical significance

---

[2]The ACLU did not argue excessive governmental entanglement with religion. The district court thus confined its analysis to the purpose and effect prongs. *Mercer County*, 219 F. Supp. 2d at 782.

of the documents included in the display–was not a sham. *Id.* at 785. It also found that there was nothing in the legislative history indicating a religious purpose. *Id.* at 787. Thus, according to the district court, Mercer County had a secular purpose in erecting this display. *Id.* at 788.

As for the endorsement test, the district court found that "[t]he context and affidavit of Judge McGinnis convey that the Commandments are part of the city's [sic] celebration of its cultural and historical roots and not a promotion of religious faith." *Id.* at 794. According to the district court, the reasonable person would not view the display as an endorsement of religion. *Id.* Having concluded that the display survived the *Lemon* test, the court denied the ACLU's motion for preliminary injunction. At the same time, the district court denied Mercer County's motion for summary judgment without prejudice and granted the ACLU 120 days to conduct discovery on the issue of religious purpose. *Id.* at 798.

The discovery period lapsed without the ACLU's conducting or requesting any discovery. Mercer County subsequently refiled its motion for summary judgment. In its ruling on Mercer County's motion for summary judgment, the district court reincorporated the findings of fact and conclusions of law from its earlier opinion. *ACLU v. Mercer County*, 240 F. Supp. 2d 623, 624 (E.D. Ky. 2003). Because the ACLU failed to raise any genuine issue of material fact, the court granted the County's motion and dismissed the ACLU's claims with prejudice. *Id.* at 625-26.

The ACLU timely appealed to this Court. Following oral argument in this case, the Supreme Court granted a writ of certiorari in *McCreary County*. 125 S. Ct. 310 (U.S. Oct. 12, 2004) (No. 03-1693). After *McCreary County* was decided, we invited both parties to submit supplemental briefs addressing that case and another case involving the constitutionality of the public display of the Ten Commandments, *Van Orden v. Perry*, 125 S. Ct. 2854 (2005).

## II.

A district court's grant of summary judgment is reviewed de novo. *Watkins v. City of Battle Creek*, 273 F.3d 682, 685 (6th Cir. 2001). Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). This Court must consider the evidence and draw all reasonable inferences in favor of the non-moving party. *Siggers-El v. Barlow*, 412 F.3d 693, 699 (6th Cir. 2005).

## III.

The First Amendment says that "Congress shall make no law respecting an establishment of religion." U.S. Const. amend. I. Its dictates have been incorporated to the states and their subdivisions through the Fourteenth Amendment. *Santa Fe Indep. Sch. Dist. v. Doe*, 530 U.S. 290, 301 (2000). The Establishment Clause represents one of our most cherished safeguards. It is also one of the most heavily litigated. *See* Karen T. White, *The Court-Created Conflict of the First Amendment: Marginalizing Religion and Undermining the Law*, 6 U. Fla. J.L. & Pub. Pol'y 181, 182 (1994).

## IV.

### A.

In *McCreary County*, two Kentucky counties, McCreary and Pulaski Counties (collectively, "the Counties"),[3] originally posted standalone copies of the Ten Commandments in their respective courthouses. 125 S. Ct. at 2728. The McCreary County legislative body required that the display be placed in "'a very high traffic area.'" *Id.* (quoting *ACLU v. McCreary County*, 96 F. Supp. 2d 679, 684 (E.D. Ky. 2000)). Both of the displays were "'readily visible'" and confronted "'citizens who use the courthouse to conduct their civic business, to obtain or renew driver's licenses . . . , to register cars, to pay local taxes, and to register to vote.'" *Id.* (quoting *McCreary County*, 96 F. Supp. 2d at 684). The Pulaski County Judge-Executive presided over the ceremony to hang the display. *Id.* Accompanying him was the pastor of the Judge-Executive's church. *Id.* The Judge-Executive told "the story of an astronaut who became convinced 'there must be a divine God' after viewing the Earth from the moon." *Id.* The pastor "testified to the certainty of the existence of God," *id.* at 2738, and said that the display was "one of the greatest things the judge could have done to close out the millennium," *id.* at 2728 (internal quotation omitted).

The ACLU of Kentucky brought suit against both counties for alleged violations of the Establishment Clause. *Id.* at 2729. After suit but before a ruling on the motion for injunction, both counties authorized second displays to replace the standalone displays. *Id.* In support of their measures, the counties stated the following in nearly identical resolutions:

> "[T]he Ten Commandments are codified in Kentucky's civil and criminal laws"; . . . the Kentucky House of Representatives . . . in 1993 "voted unanimously . . . to adjourn . . . 'in remembrance and honor of Jesus Christ, the Prince of Ethics'"; . . . the "County Judge and . . . magistrates agree with the arguments set out by Judge [Roy] Moore" in defense of his "display [of] the Ten Commandments in his courtroom"; and . . . the "Founding Father[s] [had an] explicit understanding of the duty of elected officials to publicly acknowledge God as the source of America's strength and direction." Def. Exh. 1, at 1-3, 6.

*Id.* (all alterations in original).

The counties then hung expanded displays that included not only copies of the Ten Commandments but also eight other documents in smaller frames, "each either having a religious theme or excerpted to highlight a religious element." *Id.* These documents were

> the "endowed by their Creator" passage from the Declaration of Independence; the Preamble to the Constitution of Kentucky; the national motto, "In God We Trust"; a page from the Congressional Record of February 2, 1983, proclaiming the Year of the Bible and including a statement of the Ten Commandments; a proclamation by President Abraham Lincoln designating April 30, 1863, a National Day of Prayer and Humiliation; an excerpt from President Lincoln's "Reply to Loyal Colored People of Baltimore upon Presentation of a Bible," reading that "[t]he Bible is the best gift God has ever given to man"; a proclamation by President Ronald Reagan marking 1983 the Year of the Bible; and the Mayflower Compact.

---

[3] A third defendant, the Harlan County (Kentucky) School Board, was involved in the litigation up to and including the appeal to this Court. *See McCreary County*, 354 F.3d at 440. After this Court affirmed the preliminary injunction, the Harlan County School Board decided to separately petition for writ of certiorari. *McCreary County*, 125 S. Ct. at 2728 n.1. That petition was denied. *Harlan County v. ACLU*, 125 S. Ct. 2988 (2005).

*Id.* at 2729-30 (alteration in original).

The district court granted the motion for preliminary injunction and ordered the displays removed immediately. *Id.* at 2730. After changing counsel, both counties then erected a third exhibit entitled "'The Foundations of American Law and Government Display.'" *Id.* at 2730-31. The resolution authorizing the second display was not repealed (at least not until after oral argument before the Supreme Court, *id.* at 2740 n.19), and no new resolution was passed authorizing a third display, *id.* at 2739. Only after the ACLU sought to enjoin this third display did the counties articulate any secular purposes for the displays. *See id.* at 2731.

The district court expanded the injunction to enjoin the posting of all three displays, finding "the assertion that the Counties' broader educational goals are secular 'crumble[s] . . . upon examination of the history of this litigation.'" *Id.* (quoting *ACLU v. McCreary County*, 145 F. Supp. 2d 845, 849 (E.D. Ky. 2001)) (alteration in original). This Court affirmed. *McCreary County*, 354 F.3d at 462.

A divided Supreme Court affirmed the grant of preliminary injunction.[4] The majority noted initially that, among its cases, *Lemon*'s "secular purpose" inquiry has been "seldom dispositive" and, standing alone, it "'may rarely be determinative.'" *Id.* at 2732 (quoting *Wallace v. Jaffree*, 472 U.S. 38, 75 (1985) (O'Connor, J., concurring)). The majority stated that government violates the Establishment Clause when it "acts with the ostensible and predominant purpose of advancing religion,"[5] *id.* at 2733, which is to be judged under an "'objective observer'" standard, *id.* at 2734 (quoting *Santa Fe*, 530 U.S. at 308 (O'Connor, J., concurring)). The objective observer is presumed to be aware of the "'text, legislative history, and implementation'" of the state action. *Id.* (quoting *Santa Fe*, 530 U.S. at 308 (O'Connor, J., concurring)). At the same time, the Court cautioned that a finding of impermissible purpose should be rare. *See id.* at 2735. Only "where an understanding of official objective emerges from readily discoverable fact" is judicial scrutiny warranted. *Id.* at 2734.

Turning to the Counties' displays, the *McCreary County* majority first found the original standalone displays similar to the display held unconstitutional in *Stone v. Graham*, 449 U.S. 39 (1980) (per curiam). *McCreary County*, 125 S. Ct. at 2738. Like the display in *Stone*, there was nothing to indicate an objectively secular purpose. *Id.* The *McCreary County* majority emphasized that the displays "set out a text of the Commandments as distinct from any traditionally symbolic representation, and each stood alone, not part of an arguably secular display." *Id.* Moreover, Pulaski County had a pastor speak to the certainty of the existence of God at the dedication ceremony. *Id.* According to the majority, the reasonable person would thus conclude that the displays were religiously motivated. *Id.*

The Court found the second, expanded displays similarly problematic. The additional documents "highlighted references to God as their sole common element." *Id.* at 2739. The Court found "the display[s'] unstinting focus was on religious passages, showing that the Counties were posting the Commandments precisely because of their sectarian content." *Id.* The "extraordinary resolutions" authorizing these displays, *id.* at 2740, declared Jesus Christ the embodiment of ethics,

---

[4] Justice Souter delivered the opinion of the Court, in which Justices Stevens, O'Connor, Ginsburg, and Breyer joined. Justice O'Connor filed a concurring opinion. Justice Scalia filed a dissenting opinion, in which Chief Justice Rehnquist and Justice Thomas joined, and in which Justice Kennedy joined in part.

[5] The language of "predominant purpose" signaled a departure from the Court's earlier "secular purpose" inquiries. *Id.* at 2757 (Scalia, J., dissenting) ("[T]he [*McCreary County* majority] replaces *Lemon*'s requirement that the government have '*a* secular . . . purpose' with the heightened requirement that the secular purpose 'predominate' over any purpose to advance religion." (quoting *Lemon*, 403 U.S. at 612)).

*id.* at 2739. The Court concluded that these displays and resolutions "presented an indisputable, and undisputed, showing of an impermissible purpose." *Id.*

The majority found the third displays, "Foundations of American Law and Government," also evidenced a religious purpose. The *McCreary County* Court emphasized that, when the new displays were posted, the prior resolutions were not repealed, and no new resolutions authorizing the displays were enacted. *Id.* at 2739. Rather, the Counties simply retained new attorneys. The majority found it worth noting that "[t]he Counties' claims did not . . . persuade the [district] court, intimately familiar with the details of this litigation, or the Court of Appeals, neither of which found a legitimizing secular purpose in this third version of the display." *Id.* at 2740. The Court continued:

> [The Counties'] new statements of purpose were presented only as a litigating position, there being no further authorizing action by the Counties' governing boards. And although repeal of the earlier county authorizations would not have erased them from the record of evidence bearing on current purpose, the extraordinary resolutions for the second display passed just months earlier were not repealed or otherwise repudiated. Indeed, the sectarian spirit of the common resolution found enhanced expression in the third display, which quoted more of the purely religious language of the Commandments than the first two displays had done. No reasonable observer could swallow the claim that the Counties had cast off the objective so unmistakable in the earlier display.

*Id.* at 2740 (footnotes and citations omitted). Finally, the Supreme Court questioned the Counties' selection of posted material. *Id.* In the context of this case, the reasonable observer could not separate the "Foundations" display from its sectarian history. The Court therefore held the preliminary injunction was "adequately supported by evidence that the Counties' purpose had not changed at the third stage." *Id.* at 2741.

### B.

Mercer County concedes that the display itself is identical in all material respects to the third and final displays found unconstitutional in *McCreary County*. The County nevertheless argues that its display is constitutional because, in contrast with *McCreary County*, the predominant purpose of the display in this case is secular. We agree.

Critical to the finding of sectarian purpose in *McCreary County* was the extended history: the original standalone copy of the Ten Commandments; a pastor's speaking to the existence of God at the hanging ceremony; a second, more distinctly religious display; and the "extraordinary" resolutions authorizing the displays that were not repealed even after the "Foundations" display was posted. The objective observer in McCreary and Pulaski Counties was deemed aware of this background, and thus saw an impermissible purpose.

The Mercer County display, on the other hand, lacks a similar sectarian pedigree. Here, there was only one display, one authorizing measure, and one implementation, all of which demonstrate a secular purpose. The "Foundations" display is the lone exhibit the County has posted in its courthouse. There being but one display, the County has needed but one resolution. Mr. Rousey hung the display himself; there is no evidence of a ceremony solemnized by a clergyman. In fact, the only history the objective observer would incorporate into this display is the statement of Judge McGinnis that the purpose of the display is to recognize American legal traditions.

We defer to the government's stated purpose, *id.* at 2735, except "in those *unusual* cases where the claim was an apparent sham" and the primary objective is religious, *id.* at 2736 (emphasis added). Although we presume the sincerity of the legislature's express purpose, *see id.* at 2735;

*ACLU v. Capitol Square Review & Advisory Bd.*, 243 F.3d 289, 307 (6th Cir. 2001) (en banc), objective evidence may be helpful in "'distinguis[h][ing] a sham secular purpose from a sincere one,'" *Santa Fe*, 530 U.S. at 308 (quoting *Wallace*, 472 U.S. at 75 (O'Connor, J., concurring)) (first alteration in original). Here, unlike *McCreary County*, Mercer County's stated purpose was more than a mere "litigating position." Instead, it is supported by context, including the explanatory document and the eight other objectively historical and secular documents. A reasonable observer would not view this display as an attempt by Mercer County to establish religion. Instead, he would view it for what it is: an acknowledgment of history.

We agree with the district court that there is no evidence in this case that the County's stated purpose is a sham. *Mercer County*, 219 F. Supp. 2d at 785. The ACLU was given ample opportunity to produce evidence to the contrary and failed to do so. The Mercer County display was neither immediately preceded by nor invariably connected to previous unconstitutional displays. As the district court said, "the Commandments were displayed in a proper historical context *ab initio*," *id.* at 787, untainted by previous impermissible attempts to exhibit the Decalogue like those that proved fatal in *McCreary County*, *see McCreary County*, 125 S. Ct. at 2737 n.14. The objective observer in Mercer County has no recent history of religiously motivated governmental acts or resolutions to incorporate into the display.[6] We conclude, therefore, that the predominant purpose of the "Foundations" display is secular.

As *McCreary County* itself recognizes, identical displays may nonetheless be constitutionally unique:

> One consequence of taking account of the purpose underlying past actions is that the same government action may be constitutional if taken in the first instance and unconstitutional if it has a sectarian heritage. . . . [I]t will matter to objective observers whether posting the Commandments follows on the heels of displays motivated by sectarianism, or whether it lacks a history demonstrating that purpose. . . . *[W]here one [of two identical] display[s] has a history of manifesting sectarian purpose that the other lacks, it is appropriate that they be treated differently* . . . .

*McCreary County*, 125 S. Ct. at 2737 n.14 (emphasis added). Were it otherwise, the Supreme Court, reviewing the law de novo, *id.* at 2737, would have simply ruled that the displays violated the Establishment Clause on their face. The opinion instead focuses on the evolution of the displays, and the Court was careful not to extend its holding any further:

> [W]e do not decide that the Counties' past actions forever taint any effort on their part to deal with the subject matter. We hold only that purpose needs to be taken seriously under the Establishment Clause and needs to be understood in light of context . . . . It is enough to say here that district courts are fully capable of adjusting preliminary relief to take account of genuine changes in constitutionally significant conditions.

---

[6] It is not an argument that the "objective observer" in Kentucky now has the tainted legislative history of the McCreary and Pulaski Counties display to incorporate into the Mercer County display. *McCreary County* gained significant local as well as national notoriety, and we would be naive to assume that the objective observer in Mercer County is unaware of those attempts to advance religion. The Supreme Court, however, "[did] not decide that the Counties' past actions forever taint any effort on their part to deal with the subject matter." *McCreary County*, 125 S. Ct. at 2741. In fact, the majority emphasized that the district court should be willing to modify its judgment should the counties later demonstrate a predominantly secular purpose. *See id.* If the counties involved in *McCreary County* may purge themselves of the impermissible purpose, it follows *a fortiori* that Mercer County may act free of the *McCreary County*-taint. Furthermore, the sins of one government should not be revisited on other governments. There is quite simply no basis in law or fact for such imputation.

*Id.* at 2741.  Nothing in the Court's opinion can be read to stand for the proposition that governmental displays such as the ones involved, without more, are unconstitutional.

Lastly, it should be noted that *McCreary County* involved an appeal from preliminary injunction.  *Id.* at 2737.  The Supreme Court thus reviewed the district court's decision for abuse of discretion.  *Id.*  Under this deferential standard, the Court will affirm and remand for a trial on the merits "[i]f the underlying constitutional question is close."  *Ashcroft v. ACLU*, 542 U.S. 656, 700 (2004); *see also McCreary County*, 125 S. Ct. at 2737 (citing *Ashcroft* as authority for the proper standard of review).  The majority narrowly tailored its opinion to the facts as they existed at the time of appeal, even to the point of leaving open the possibility on remand of the district court's lifting the preliminary injunction and denying permanent relief.  *See McCreary County*, 125 S. Ct. at 2741.  Placed it in its proper procedural setting, *McCreary County* requires only that purpose be taken seriously and understood in light of context.  *Id.*

Mercer County authorized the posting of nine documents in its courthouse in an attempt to recognize American legal history.  It is of course not unusual for a government to educate the public in this manner; in fact, it is commonplace.  As a general matter, then, an historical display in a courthouse would not set off alarms in the objective observer.  Thus, to be problematic, there must be something more to signal a predominantly religious purpose.  But the Mercer County display, in this context, does not contain any overtly sectarian messages.  While several of the documents refer to the Deity, it would be unreasonable, *ipso facto*, to interpret those as evidencing a religious purpose.  By including the Ten Commandments in a display of American legal documents, the County is merely acknowledging the Commandments' historical influence.  We generally defer to the government's rational judgment of what is historically relevant.[7]  *See Turner Broad. Sys., Inc. v. FCC*, 520 U.S. 180, 195 (1997); *Jacobs v. Barr*, 959 F.2d 313, 319 (D.C. Cir. 1992) ("[A]lthough courts should not defer to Congress on constitutional questions, we *should* defer–or give 'great weight'–to Congress on empirical questions.").  The Supreme Court has said repeatedly that the Ten Commandments have historical importance.  *See, e.g.*, *Van Orden*, 125 S. Ct. at 2863 (plurality opinion) (citing *McGowan v. Maryland*, 366 U.S. 420, 442 (1961); *id.* at 462 (separate opinion of Frankfurter, J.)); *Edwards v. Aguillard*, 482 U.S. 578, 593-94 (1987).  The majority in *McCreary County* and the plurality in *Van Orden* agreed.  *See McCreary County*, 125 S. Ct. at 2738; *Van Orden*, 125 S. Ct. at 2863 (plurality opinion).[8]

---

[7]The *McCreary County* majority criticized the "Foundations" display for its puzzling "choices and omissions."  *Id.* at 2740.  "In a collection of documents said to be 'foundational' to American government, it is at least odd to include a patriotic anthem, but to omit the Fourteenth Amendment . . . [and] to leave out the . . . Constitution . . . while quoting the . . . Magna Carta . . . ."  *Id.*  This discussion is entirely unhelpful.  As an initial matter, it is hardly surprising to learn that Mercer County and the U.S. Supreme Court have differing opinions as to the relative importance of certain historical documents.  But however quizzical it may seem to include a poem written in 1814 in a display purported to be "foundational," it would be arguably more absurd to include a copy of an amendment ratified in 1868.  Conversely, the Court does not question the inclusion of the words "In God We Trust," even though that phrase was not officially made the national motto until 1956.  *See* 36 U.S.C. § 302 (original version at ch. 795, § 186, 70 Stat. 732 (1956)).  In any event, what five justices of the Supreme Court would include in a display commemorating Kentucky and American legal history has no bearing on the constitutionality of the display as erected.  *Cf. Lynch v. Donnelly*, 465 U.S. 668, 681 n.7 (1984) ("[T]hat the [state]'s objectives could have been achieved without including the [challenged item] in the display . . . is irrelevant.  The question is whether the display [as is] violates the Establishment Clause." (citation omitted)).  Thus, we are not persuaded by comments indicating that the Supreme Court would have posted a different display.  We are called upon to analyze the documents actually displayed.  Having done so, we conclude that they do not have a religious purpose.

[8]By citing to case law for support on this matter, we do not intend to endorse the idea that the judiciary is better qualified than our coordinate branches to determine what is, and what is not, historically relevant.  We do so merely to show that the Supreme Court does not view the presence of the Ten Commandments in a public building as a presumptive establishment of religion.

The ACLU relies heavily on *Stone v. Graham*. In *Stone*, the Supreme Court held a Kentucky law requiring the posting of the Ten Commandments in classrooms unconstitutional as lacking a secular purpose. 449 U.S. at 42-43. The *Stone* Court reasoned that "[t]he pre-eminent purpose for posting the Ten Commandments on schoolroom walls is plainly religious in nature. . . . The Commandments do not confine themselves to arguably secular matters . . . ." *Id.* at 41.

*Stone*, however, is inapposite here. First, *Stone* itself recognized that the Ten Commandments, like the Bible, could be constitutionally integrated into public school curriculum. *Id.* at 42 (stating that "the Bible may constitutionally be used in an appropriate study of history, civilization, ethics, comparative religion, or the like"). Second, the Supreme Court has since declared that "*Stone* . . . [does] not mean that no use could ever be made of the Ten Commandments, or that the Ten Commandments played an exclusively religious role in the history of Western Civilization." *Aguillard*, 482 U.S. at 593-94. The *McCreary County* majority rejected the notion that *Stone* controls simply because the Ten Commandments are involved. 125 S. Ct. at 2737-38 ("*Stone* did not purport to decide the constitutionality of every possible way the Commandments might be set out by the government . . . ."). In fact, *McCreary County* cites *Stone* for support only in its discussion of the Counties' original standalone display. *See id.* at 2738, n.17. It did not endorse *Stone*'s reasoning in its analysis of the Counties' second or third displays. The *Van Orden* plurality simply dismissed *Stone* as inapplicable. *See Van Orden*, 125 S. Ct. at 2864, n.11 (plurality opinion). Whatever is left of *Stone* is limited to circumstances involving public displays of the Ten Commandments in isolation.

## V.

## A.

Having found that the Mercer County display survives *McCreary County*, we must now determine what, if any, additional scrutiny the Establishment Clause requires. The district court applied the *Lemon* test. We begin with an inquiry into the current status of *Lemon*.

Under *Lemon*, government action does not run afoul of the Establishment Clause if it (1) has a secular purpose; (2) does not have the primary or principal effect of either advancing or inhibiting religion; and (3) does not foster an excessive governmental entanglement with religion.[9] *Lemon v. Kurtzman*, 403 U.S. 602, 612-13 (1971). The first and second prongs have since been reformulated. After *McCreary County*, the first is now the predominant purpose test. *McCreary County*, 125 S. Ct. at 2733; *id.* at 2757 (Scalia, J., dissenting) ("[T]he [*McCreary County* majority] replaces *Lemon*'s requirement that the government have '*a* secular . . . purpose' with the heightened requirement that the secular purpose 'predominate' over any purpose to advance religion." (quoting *Lemon*, 403 U.S. at 612)). The second, the so-called "endorsement" test, asks whether the government action has the purpose or effect of endorsing religion.[10] *Adland v. Russ*, 307 F.3d 471, 479 (6th Cir. 2002); *Granzeier v. Middleton*, 173 F.3d 568, 573 (6th Cir. 1999).

Even with these reformulations, *Lemon* has been criticized by a number of Supreme Court justices. *See, e.g.*, *Lamb's Chapel v. Ctr. Moriches Union Free Sch. Dist.*, 508 U.S. 384, 398-400 (1993) (Scalia, J., concurring, joined by Thomas, J.) (citing other Supreme Court criticisms of *Lemon*); *Allegheny*, 492 U.S. at 655-57 (Kennedy, J., concurring in part and dissenting in part);

---

[9]The ACLU does not contend on appeal that the display fosters an excessive governmental entanglement with religion.

[10]Justice O'Connor first articulated the endorsement inquiry in her concurring opinion in *Lynch v. Donnelly*. *See* 465 U.S. 668, 690-94 (1984) (O'Connor, J., concurring). A plurality of the Supreme Court adopted it soon thereafter. *See County of Allegheny v. ACLU*, 492 U.S. 573, 594-97 (1989) (plurality opinion).

*Corp. of Presiding Bishop of Church of Jesus Christ of Latter-day Saints v. Amos*, 483 U.S. 327, 346-48 (1987) (O'Connor, J., concurring).   In fact, "just two years after *Lemon* was decided, [the Supreme Court] noted that the factors identified in *Lemon* serve as 'no more than helpful signposts.'"  *Van Orden*, 125 S. Ct. at 2861 (plurality opinion) (quoting *Hunt v. McNair*, 413 U.S. 734, 741 (1973)).   No fewer than seven times since 1983 has the Supreme Court decided an Establishment Clause case without applying *Lemon*.  *See Van Orden*, 125 S. Ct. 2854 (plurality opinion); *Zelman v. Simmons-Harris*, 536 U.S. 639 (2002); *Good News Club v. Milford Cent. Sch.*, 533 U.S. 98 (2001); *Captiol Square Review & Advisory Bd. v. Pinette*, 515 U.S. 753 (1995); *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819 (1995); *Lee v. Weisman*, 505 U.S. 577 (1992); *Marsh v. Chambers*, 463 U.S. 783 (1983).

*McCreary County* and *Van Orden* did not settle the issue.  On the one hand, the Supreme Court declined an invitation to abandon *Lemon* in *McCreary County*.  *See McCreary County*, 125 S. Ct. at 2734-35.  The majority in that case certainly implies *Lemon*'s continued vitality by conducting purpose analysis.  *See id.*, 125 S. Ct. at 2735-41; *see also id.* at 2757-58 (Scalia, J., dissenting) (criticizing the majority's application of the *Lemon* test).  The majority never explicitly reaffirms *Lemon*, though, because the inquiry ended when the Court held the displays unconstitutional as having an impermissible purpose.

On the other hand, a plurality of the Court in *Van Orden* disregarded the *Lemon* test, noting that *Lemon* is "not useful in dealing with the sort of passive monument that Texas has erected on its Capitol grounds."  125 S. Ct. at 2861 (plurality opinion).  The plurality instead employed an analysis "driven both by the nature of the monument and by our Nation's history."  *Id.*  Justice Breyer's concurrence arguably provided a fifth vote as to *Lemon*'s inapplicability.[11]  *See id.* at 2868-72 (Breyer J., concurring) (exercising "legal judgment" as a substitute for any of the Supreme Court's Establishment Clause tests in the Ten Commandments setting).  However, "[t]he views of five Justices that the case should be reconsidered or overruled cannot be said to have effected a change in Establishment Clause law."  *See Agostini v. Felton*, 521 U.S. 203, 217 (1997).  Thus, we remain in Establishment Clause purgatory.

The recent decisions of this Court have routinely applied *Lemon*, including the endorsement test.  *See, e.g.*, *ACLU v. Ashbrook*, 375 F.3d 484, 490 (6th Cir. 2004); *Adland v. Russ*, 307 F.3d 471, 479 (6th Cir. 2002); *ACLU v. Capitol Square Review & Advisory Bd.*, 243 F.3d 289, 306 (6th Cir. 2001) (en banc).  Because *McCreary County* and *Van Orden* do not instruct otherwise, we must continue to do so.  *But see ACLU v. City of Plattsmouth*, 419 F.3d 772, 778 n.8 (8th Cir. 2005) (en banc) (declining to apply *Lemon* post-*McCreary County* and *Van Orden* in a case factually similar to *Van Orden*).

**B.**

Under the endorsement test, the government violates the Establishment Clause when it acts in a manner that a reasonable person would view as an endorsement of religion.  *Granzeier v. Middleton*, 173 F.3d 568, 573 (6th Cir. 1999).  This is an objective standard, similar to the judicially-created "reasonable person" standard of tort law. *Ams. United for Separation of Church & State v. City of Grand Rapids*, 980 F.2d 1538, 1543-44 (6th Cir. 1992) (en banc).  "Accordingly, we do not ask whether there is *any* person who could find an endorsement of religion, whether *some* people may be offended by the display, or whether *some* reasonable person *might* think [the

---

[11]Justice Breyer joined the majority opinion in *McCreary County* that implicitly intends for *Lemon* to govern these types of cases.  Curiously, he concurred in *Van Orden*, arguing that "the exercise of legal judgment" in these cases "must reflect and remain faithful to the underlying purposes of the [Religion] Clauses, and it must take account of context and consequences measured in light of those purposes," and that "no exact formula can dictate a resolution to such fact-intensive cases."  *Van Orden*, 125 S. Ct. at 2869 (Breyer, J., concurring).

government] endorses religion." *Id.* at 1544. Rather, the inquiry here is whether *the* reasonable person *would* conclude that Mercer County's display has the effect of endorsing religion. *See id.*

Context is crucial to this analysis. *See Allegheny*, 492 U.S. at 597 (plurality opinion); *cf. Lynch*, 465 U.S. at 686 ("[T]he inclusion of a single symbol of a particular historic religious event . . . [does not] so 'taint' the . . . exhibit as to render it violative of the Establishment Clause."). The reasonable person is deemed aware of the circumstances under which governmental actions arise, including the legislative history and implementation. *Pinette*, 515 U.S. at 780 (O'Connor J., concurring). If context, history, and the act itself send the "unmistakable message" of endorsing religion, then the act is unconstitutional. *Allegheny*, 492 U.S. at 600 (plurality opinion).

As applied to this case, we are guided by the recent decision of the Seventh Circuit addressing the constitutionality of the public display of the Ten Commandments. *See Books v. Elkhart County (Books II)*, 401 F.3d 857 (7th Cir. 2005).[12] *Books II* involved a challenge to the presence of the Ten Commandments in the Elkhart County Administration Building. *Id.* at 858. The Commandments were part of a larger "Foundations" display nearly identical to the Mercer County display.[13] In authorizing the display, Elkhart County, like Mercer County, noted that all of the documents "'have had particular historical significance to the development of this country.'" *Id.*

Even after noting that the Elkhart County display required "special scrutiny" because it was located at the seat of government, *id.* at 867, a divided panel of the Seventh Circuit concluded that the reasonable person would not view the "Foundations" display as an endorsement of religion:[14]

> [T]he documents are displayed in a way that does not direct an observer to focus on any one document. Furthermore, . . . the display includes a framed explanation of the historic significance of each of the documents. The content and context of the "Foundations" display, considered as a whole, suggest that the Ten Commandments are included not for their singular religious import (that is, as a statement of religious imperatives) but, rather, for their historical contribution to the development of American legal and political traditions.

*Id.* at 868. Mindful that mere acknowledgment of religion's role in American history does not offend the Constitution, the court held that Elkhart County's display of the Ten Commandments did not constitute an endorsement of religion. *Id.* at 868-69.

We agree. In the Mercer County "Foundations" display, the Ten Commandments are part of an otherwise secular exhibit. "The Commandments are not displayed in larger text or otherwise more prominently than the other items in the display . . . ." *Mercer County*, 219 F. Supp. 2d at 794.

---

[12] *Books II* was decided several months before the Supreme Court decided *McCreary County*. Like McCreary and Pulaski Counties, Elkhart County had a previously erected display of the Ten Commandments struck down by the courts. *See Books v. Elkhart County (Books I)*, 235 F.3d 292 (7th Cir. 2000). Thus, given the similar histories of implementation in *Books II* and *McCreary County*, it is at least arguable that the outcome in *Books II* would have been different based on purpose had it been decided after *McCreary County*. Notwithstanding, *McCreary County* does not undermine *Books II*'s endorsement analysis.

[13] The only differences are constitutionally immaterial. Elkhart County naturally substituted the Preamble to the Indiana Constitution for that of the Kentucky Constitution, and also flanked the display with the flags of the State of Indiana and the United States. *Books II*, 401 F.3d at 858-59.

[14] Judge Easterbrook dissented, arguing that the plaintiff lacked standing. *Id.* at 871 (Easterbrook, J., dissenting). Had he proceeded to the merits, however, it is clear that he would have upheld the display as constitutional. *See id.* at 869-70 (disavowing the endorsement test in favor of the less-stringent "coercion test" as a more faithful reading of the First Amendment's "establishment" language).

The other items include the Bill of Rights and the Declaration of Independence, documents fundamental to American history. When placed on a level with other documents having such unquestioned civil, legal, and political influence, the Commandments' own historical significance becomes more pronounced. These nine documents, along with the explanatory text, send the "unmistakable message" of the County's acknowledgment of legal history. *See Books II*, 401 F.3d at 868 ("By virtue of the texts that are included and the content of the accompanying explanation, this display tells viewers that the American founders were inspired by a religious tradition that includes the Ten Commandments and that those values influenced the development of our law and government."). That they appear in a courthouse only strengthens the message. *See Van Orden*, 125 S. Ct. at 2869-70 (Breyer, J., concurring) (stating that the Commandments' legal message helps explain their presence in courthouses across the country). Furthermore, as discussed *supra*, nothing in the legislative history tends to show otherwise.[15] To the contrary, the reasonable observer is affirmatively aware that Mercer County did not attempt to erect the monument in isolation or as part of a purely religious exhibit before posting the "Foundations" display. We therefore agree with the conclusion of the district court that the display of the Ten Commandments in the Mercer County Courthouse is not an endorsement of religion.

Were we to focus on the perceptions of individuals, every religious display would be "necessarily precluded so long as some passersby would perceive a governmental endorsement thereof." *Pinette*, 515 U.S. at 779 (O'Connor J., concurring). Thus, we find unavailing the ACLU's own assertions that it finds the display offensive and that the display "diminishes [its] enjoyment of the courthouse." (Compl. ¶ 18.) Religion does not become relevant to standing in the political community simply because a particular viewer of a governmental display feels uncomfortable. *Id.* at 780 (O'Connor J., concurring); *see Lee v. Weisman*, 505 U.S. 577, 597-98 (1992) ("People may take offense to all manner of religious as well as nonreligious messages, but offense alone does not in every case show a violation. We know too that sometimes to endure social isolation or even anger may be the price of conscience or noncomformity."). Our concern is that of the reasonable person. And the ACLU, an organization whose mission is "to ensure that . . . the government [is kept] out of the religion business,"[16] does not embody the reasonable person.

The ACLU's argument contains three fundamental flaws. First, the ACLU makes repeated reference to "the separation of church and state." This extra-constitutional construct has grown tiresome. The First Amendment does not demand a wall of separation between church and state. *See Lynch*, 465 U.S. at 673; *Lemon*, 403 U.S. at 614; *Zorach v. Clauson*, 343 U.S. 306, 312 (1952); *Brown v. Gilmore*, 258 F.3d 265, 274 (4th Cir. 2001); *Stark v. Indep. Sch. Dist., No. 640.*, 123 F.3d 1068, 1076 (8th Cir. 1997); *see also Capitol Square*, 243 F.3d at 300 (dismissing strict separatism as "a notion that simply perverts our history"). Our Nation's history is replete with governmental acknowledgment and in some cases, accommodation of religion. *See, e.g.*, *Marsh v. Chambers*, 463 U.S. 783 (1983) (upholding legislative prayer); *McGowan v. Maryland*, 366 U.S. 420 (1961) (upholding Sunday closing laws); *see also Lynch*, 465 U.S. at 674 ("There is an unbroken history of official acknowledgment by all three branches of government of the role of religion in American life from at least 1789."); *Capitol Square*, 243 F.3d at 293-99 (describing historical examples of governmental involvement with religion). After all, "[w]e are a religious people whose institutions

---

[15]Our decision in *Adland v. Russ*, 307 F.3d 471 (6th Cir. 2002) is distinguishable on this ground. Unlike the display here, the monument erected on the Kentucky state capitol grounds involved overwhelming evidence of religious intendment and legal posturing. *See id.* at 481-84. *Adland* also involved a display where the Decalogue dominated over all others, and where the government included uniquely religious symbols that tended to emphasize the sectarian nature of the Commandments. *Id.* at 486. Those factors are simply not present here.

[16]American Civil Liberties Union, http://www.aclu.org/ReligiousLiberty/ReligiousLibertyMain.cfm (last visited Oct. 25, 2005).

presuppose a Supreme Being." *Zorach*, 343 U.S. at 313. Thus, state recognition of religion that falls short of endorsement is constitutionally permissible.

Second, the ACLU focuses on the religiousness of the Ten Commandments. No reasonable person would dispute their sectarian nature, but they also have a secular nature that the ACLU does not address. That they are religious merely begs the question whether *this display* is religious; it does not answer it. "[T]he Establishment Clause inquiry cannot be distilled into a fixed, *per se* rule." *Pinette*, 515 U.S. at 778 (O'Connor J., concurring); *see Lee v. Weisman*, 505 U.S. 577, 597-98 (1992). Although treating the subject matter categorically would make our review eminently simpler, we are called upon to examine Mercer County's actions in light of context. "Simply having religious content or promoting a message consistent with a religious doctrine does not run afoul of the Establishment Clause." *Van Orden*, 125 S. Ct. at 2863 (plurality opinion). Moreover, "[f]ocus exclusively on the religious component of any activity would inevitably lead to its invalidation under the Establishment Clause." *Lynch*, 465 U.S. at 680. The Constitution requires an analysis beyond the four-corners of the Ten Commandments. In short, "proving" that the Ten Commandments themselves are religious does not prove an Establishment Clause violation.

Third, the ACLU erroneously–though perhaps intentionally–equates recognition with endorsement. To endorse is necessarily to recognize, but the converse does not follow. *Cf. Mercer County*, 219 F. Supp. 2d at 789 ("Endorsement of religion is a normative concept; whereas acknowledgment of religion is not necessarily a value-laden concept."). Because nothing in the display, its history, or its implementation supports the notion that Mercer County has selectively endorsed the sectarian elements of the first four Commandments, we fail to see why the reasonable person would interpret the presence of the Ten Commandments as part of the larger "Foundations" display as a governmental endorsement of religion.

We will not presume endorsement from the mere display of the Ten Commandments. If the reasonable observer perceived all government references to the Deity as endorsements, then many of our Nation's cherished traditions would be unconstitutional, including the Declaration of Independence and the national motto. Fortunately, the reasonable person is not a hyper-sensitive plaintiff. *See Washegesic ex rel. Pensinger v. Bloomingdale Pub. Sch.*, 33 F.3d 679, 684 (6th Cir. 1994) (Guy, J., concurring) (describing the "eggshell" plaintiff as unknown to the Establishment Clause). Instead, he appreciates the role religion has played in our governmental institutions, and finds it historically appropriate and traditionally acceptable for a state to include religious influences, even in the form of sacred texts, in honoring American legal traditions.

## VI.

The Mercer County display has a secular purpose. Unlike *McCreary County*, there is nothing in the legislative history or implementation that tends to prove a religious purpose. Nor does the display have the effect of endorsing religion. The display is therefore constitutional as a matter of law. There being no genuine issue of material fact, the district court properly granted Mercer County's motion for summary judgment.

## VII.

For the foregoing reasons, the judgment of the district court is **AFFIRMED**.